UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY STIEG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV614SNL |
| ) | |
| PATTONVILLE-BRIDGETON ) | |
| TERRACE FIRE PROTECTION ) | |
| DISTRICT, ROY E. BONE, JR., ) | |
| WILLIAM ESTERLINE, and ) | |
| DANIEL BISHOP ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Pattonville-Bridgeton Terrace Fire Protection District (the "District"), and the three individual Defendants who are members of the District's Board of Directors, Roy E. Bone, Jr. ("Bone"), William Esterline ("Esterline"), and Daniel Bishop ("Bishop") (collectively the "Board") (#13). Plaintiff Gary Stieg ("Stieg") has filed a Memorandum in Opposition to the instant Motion, and Defendants have filed a Reply. Stieg has also filed a Sur-Reply Brief. As a result, the instant Motion is now ripe for ruling. In addition to the Motion for Summary Judgment, Defendants have also filed a Motion to Strike the Affidavit of Frank J. Vatterott, which was submitted with Stieg's Memorandum in Opposition to Defendants' Motion for Summary Judgment as Plaintiff's Exhibit D (#22). Stieg has responded to the Motion to Strike, to which the Defendants have replied. This case is scheduled for a jury trial on July 25, 2005.

### Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as

not to give rise to controversy.  New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977).  Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact."  Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962).  The burden is on the moving party.  Mt. Pleasant, 838 F.2d at 273.  After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).  Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts.  Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party.

Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With this standard in mind, the Court now examines the facts of this case.[1]

### **Background**

Stieg, a firefighter employed by the District, brings this action against the District and the three members of its Board of Directors, Defendants Bone, Esterline, and Bishop. Stieg filed his Petition in the Circuit Court of St. Charles County Missouri, and the Defendants subsequently removed the instant suit to this Court. In short, Stieg has admitted to taking confidential information out of a trash can after a District meeting was held in that room. That confidential information related to a District firefighter/paramedic named Tim Wlodarek ("Wlodarek").[2] Somehow, the information about Wlodarek made its way to a St. Louis Post Dispatch reporter,[3] and when the District learned of this, it decided to conduct an investigation into the matter.

---

[1] The facts are taken from the Defendants' Statement of Undisputed Facts which is contained within their Memorandum in Support. Stieg has contested several of Defendants' facts, and all conflicts will be resolved in favor of Stieg, even if the factual dispute is not material for purposes of the instant Motion.

[2] More specifically, in May 2003, the Board held a closed executive session to discuss the fitness for duty of Wlodarek arising out of reports of his mishandling of patient care. Wlodarek had submitted to a mental evaluation, and the physician's report and underlying disciplinary and personnel documents were presented to the individual Board members and other selected employees of the District prior to the closed executive session.
 Stieg claims that he was in the boardroom in May 2003, for a training session and that while in there, he noticed documents relating to Wlodarek in the trash can under a Board member's desk. Stieg admits that he took two pieces of paper from the trash can, one of which related to Wlodarek. Stieg took the papers back to the firehouse and left them sitting out overnight on a truck. Stieg then took the papers home the next morning and put them on his dresser until he finally threw them away. Stieg claims that he saw another firefighter, Pete Kaiser ("Kaiser"), take documents from the trash can under the desk. Stieg does not know what Kaiser did with the documents, nor does Stieg know what Kaiser took.

[3] In July 2003, the District's counsel, Dan Bruntrager ("Bruntrager") received a telephone call from Joan Little ("Little"), a St. Louis Post Dispatch reporter, who indicated that she was in possession of personnel and medical documents regarding Wlodarek. Bruntrager asked Little how she came into possession of these documents, but she refused to disclose her source.

On August 12, 2003, the Board sent a letter to all District employees, which Stieg received, stating that it was investigating the alleged disclosure of Wlodarek's confidential medical information. The letter instructed: "You are hereby ordered as a condition of your employment to fully cooperate with this investigation, including answering all questions and/or producing materials or documents requested." The letter indicated that any employees who were determined to have disclosed the confidential information would be disciplined, which could include termination. The letter further provided that no adverse action would be taken against any employees who came forward within ten days of receiving the letter and admitted to disclosing the confidential information or provided knowledge of other employees who had disclosed the information.[4]

Stieg appeared at the closed executive session on January 6, 2004, in compliance with the Board's request. Stieg refused to answer any questions, and asked for a continuance so that he could have a lawyer and a union representative present. On January 15, 2004, the District sent a

---

[4]In accordance with the District's investigation, in September 2003, the Board retained a private investigator, Don Volmert ("Volmert"), to investigate how Wlodarek's confidential records were obtained by a newspaper reporter. Thereafter, Volmert interviewed District employees, including Stieg. At his interview, Stieg admitted that he had taken one document relating to Wlodarek from a trash can in the boardroom in May, 2003. Stieg told Volmert that he had been in the boardroom for training, he saw documents in the trash, he removed them from the trash and took them home where he left them on his dresser. Stieg told Volmert that he did not know what happened to the documents after he left them on his dresser. Stieg did not mention Kaiser, as he explains, because "it was a union brother thing."

Volmert also interviewed Roni Guerrant ("Guerrant"), a District secretary and Stieg's live-in girlfriend. She stated that Stieg had found documents relating to Wlodarek in the boardroom trash can the day after the May 2003 closed executive session. Guerrant stated, however, that Stieg immediately brought the documents to her and she shredded them. At Stieg's deposition, Stieg testified that "She remembers it one way and I remembered it a different way." Volmert also interviewed a firefighter named Robert Helbig ("Helbig") who told Volmert that Stieg had taken some documents relating to Wlodarek.

Volmert summarized his interviews in a final report and presented it to the Board in December 2003. Based on the discrepancies surrounding the accounts of Stieg, Guerrant and Helbig, the Board decided to call them to appear at its January 6, 2004 closed executive session.

letter to Stieg informing him that he was to appear before the Board on February 3, 2004. The letter also stated that the purpose of the hearing was "to determine whether or not [Stieg] ha[d] violated any rules or regulations of the district or whether [Stieg] improperly possessed confidential medical records an/or documents of another employee." The letter explained that "[i]f the board determines any of the above [Stieg] may be disciplined, up to and including termination," that Stieg was required to "fully and truthfully answer all questions put to [him] at this hearing as a condition of his employment," and that Stieg's "failure to answer all questions honestly and truthfully could result in adverse actions being taken against [him] ... including termination."

On January 30, 2004, the District sent another letter to Stieg, which he received. Once again, the District informed Stieg that he was to appear before the Board on February 3, 2004, and that he was required to truthfully answer all of the Board's questions. The District further informed Stieg that he was being charged with possession of "privileged and confidential communications of a fellow employee," that he "had no right to be in possession of these privileged and confidential communications," and that his willingness to completely and truthfully answer any questions may result in less severe disciplinary action, but that if the Board questions his credibility after weighing the evidence, the Board would discipline him which could include termination of his employment.

Stieg appeared with counsel at the Board's closed executive session on February 3, 2004. Despite knowing the charges, Stieg, through his counsel, asked for another continuance. Once again, the Board granted Stieg's request and granted a continuance until February 17, 2004. However, because this was the second time Stieg had appeared before the Board and refused to answer questions, the Board suspended Stieg's employment until the February 17, 2004 hearing.

The Board members did not believe Stieg had been cooperating with their investigation, and they believed that a suspension may provide an incentive for him to be more cooperative.

On February 5, 2004, the District sent another letter to Stieg which identified the respective rules that were allegedly violated, and reiterated that Stieg was being charged with wrongfully removing District property and failing to be truthful in the investigation. The letter again informed Stieg to appear before the Board on February 17, 2004.

Stieg appeared before the Board at its closed executive session on February 17, 2004. Stieg answered the Board's questions with the assistance of his attorney. During the hearing, he testified that while he was at a training session in May 2003, he found documents in the trash can which he took home and placed on his dresser. Stieg stated that he did not know what became of them. For the first time in this investigation, Stieg told the Board that he had also seen Kaiser take documents from the trash can at the same training session.

Based on Stieg's testimony and his failure to previously come forward with the information about Kaiser, the Board continued Stieg's suspension until its next closed executive session on March 2, 2004.[5] On March 5, 2004, the Board sent a letter to Stieg which set forth the Board's "Findings and Conclusions." The Board concluded that Stieg had wrongfully removed District property, and that Stieg had been dishonest during the Board's investigation by not coming forward with the information about Kaiser earlier. The Board decided to suspend Stieg for thirty days, but gave him credit for the time he had already served on suspension. Essentially, Stieg was permitted to return to work the following day.[6]

---

[5]The Board also called Guerrant, Helbig, and Kaiser to appear at the closed executive session on March 2, 2004, and each one of them did appear and testify.

[6]The Board also suspended Kaiser for thirty days, and gave written warnings to Guerrant and Helbig for their involvement in the matter.

The District and firefighters had been parties to a Memorandum of Understanding ("MOU") which governed certain aspects of the firefighters' employment with the District. The MOU is relevant because Stieg argues that it creates both a constitutionally protected liberty and property interest in Stieg's employment, which entitles him to a "full-blown" hearing and the right to review under the Missouri Administrative Procedure Act ("MAPA"), R.S.Mo. § 536.010 *et seq.* There is a dispute as to whether the MOU was in effect at the time of Stieg's suspension; Defendants argue that it was not, while Stieg argues that it was. Defendants argue that even if the MOU was in effect, Stieg would not be entitled to any more process than that which he received. Despite ample evidence that the MOU was not in effect at the time of Stieg's suspension,[7] this

---

[7]According to Defendants, the MOU, by its own terms, was in effect from January 1, 2001, until it expired under its own terms on December 31, 2003. In fact, the first page of the MOU states "Effective January 1, 2001 to December 31, 2003." *See* Defs.' Ex. P. Defendants also assert that in October 2003, the District gave notice of its intent to terminate the MOU because the parties had not been able to negotiate over a successor agreement.
    In the MOU, it states in Article 52:
    This agreement shall be effective as of the 1st day of January, 2001 and shall remain in full force and effect until the 31st day of December, 2003. This agreement shall automatically be renewed from year to year thereafter, unless either party shall have notified the other in writing, at least sixty (60) days prior to the anniversary date that it desires to modify this agreement.
    *See* Defs.' Ex. P at 14.
    Defendants have filed an exhibit with the Court, which is a letter from Fire Chief Steve Arnold to Mr. Vatterott, Stieg's counsel, dated February 3, 2004 which states in relevant part:
    Please be advised Private Stieg received a letter dated January 30 outlining the charges. We currently do not operate under a Memorandum of Understanding as the most current Memorandum expired December 31, 2003. Although the Memorandum contained an evergreen clause, the Board of Directors exercised its discretion not to renew the Memorandum in October 2003. *See* Defs.' Ex. O.
    Stieg denies that the MOU was in effect only from January 2001 until December 2003, and relies on the MOU's "evergreen clause" which automatically renews the MOU unless a party to the agreement gives sixty days advance written notice of termination. Stieg argues that the Defendants failed to produce a copy of the written notification terminating the effectiveness of the MOU prior to its expiration in December 2003. Stieg argues further that Defendants apparent failure to terminate the MOU in writing is fatal to the instant Motion because the MOU creates both constitutionally protected liberty and property interests in Stieg's employment.
    Defendants have attached a letter dated November 4, 2003, Defs.' Ex. R, to their Reply

Court will draw the inference in favor of Stieg as the non-moving party and assume for purposes of the instant Motion for Summary Judgment that the MOU was in effect. On a related note, Defendants raise the issue that a progressive discipline policy known as Policy 18 was newly implemented by the District on March 15, 2004, which was two-weeks after Stieg's suspension. Stieg does not contest the fact that Policy 18 was not in effect at the time of his suspension. Rather, Stieg argues that prior to the adoption of Policy18, the District followed informal grievance procedures analogous to those adopted in Policy 18. Stieg's only citation to the record to support his argument that informal procedures were followed is to Plaintiff's Exhibit E which is the deposition of Chief Ronald S. Arnold ("Arnold"). *See* Pl.'s Ex. E, Arnold Dep., p. 65. Later on that same page of the deposition that is cited by Stieg, Arnold states that in regard to those informal procedures, "It was always -- the discipline was always left up to the discretion of the board, and it still is even in Policy 18." Id. at 65-66. As such, Policy 18 is irrelevant to the instant Motion, and any so-called informal procedures are also irrelevant as Stieg has offered no

---

which is a written notification of the Board of Directors' desire to terminate the MOU. This letter could be construed as untimely; however, more interestingly, Stieg's counsel, Mr. Vatterott, has filed Plaintiff's Exhibit D, with the Court in which he swears that:
> On or about March 8, 2005, I met with Dennis Murray, President of the International Association of Firefighters, Local 2665. During the meeting, Mr. Murray informed me that he possessed knowledge to the effect that Defendants, in conjunction with local union representatives, ***purposefully terminated the Memorandum of Understanding (MOU)*** in order to deprive Plaintiff and/or other firefighters of the procedural rights and safeguards set forth therein."
> *See* Pl.'s Ex. D. (emphasis added).

Therefore, Stieg's counsel swears to this Court that he has intimate knowledge that the MOU was indeed terminated, but that it was done purposefully to deprive Stieg and his colleagues. This Court fails to see what the District's motives have to do with the relief that Stieg is seeking. The issue is whether the MOU was in effect, and then of course, whether it entitles Stieg to any more process that than which he received. Most unusually, Defendants have filed a Motion to Strike Mr. Vatterott's Affidavit--the one in which Mr. Vatterott states that the MOU was terminated--meanwhile Mr. Vatterott argues that the MOU was not terminated while offering a sworn affidavit in which he states that it was.

evidence that any informalities entitle him to more process beyond the reach of the Board's unfettered discretion. Therefore, Stieg's entire argument rests solely on the MOU.

## **Discussion**

Stieg asserts three counts in his Petition. Count I seeks review of Stieg's suspension under the MAPA. Count II seeks a declaratory judgment under R.S.Mo. § 536.050. Finally, Count III alleges a violation of the Fourteenth Amendment to the United States Constitution made actionable through 42 U.S.C. § 1983 ("Section 1983"). Basically, Stieg is seeking judicial review of the thirty-day disciplinary suspension stemming from his admitted taking of confidential personnel records of another District employee.

*I. The Missouri Administrative Procedure Act*

Stieg seeks review of Defendants' actions because of his suspension without a substantive hearing either before or after the suspension. Stieg brings his first count under the MAPA, which sets forth the procedures to be followed in certain administrative practices and also establishes the methods of review for decisions made by administrative agencies. The MAPA is applicable to districts, as they are creatures of state law and are considered "agencies" for purposes of the MAPA. *See e.g.*, Krentz v. Robertson Fire Protection District, 228 F.3d 897, 903-904 (8th Cir. 2000). Essentially two types of judicial review are provided under the MAPA: (1) constested case review and (2) noncontested case review. See §§ 536.140, 536.150, RSMo. "Constested case review is provided for those administrative decisions reached after a hearing to which a party is entitled by statute, ordinance, other legal provision, or, in some cases, by virtue of a life, liberty, or property interest protected by due process." State ex. rel. School Dist. of Kansas City v. Williamson, 141 S.W.3d 418, 424 (Mo. Ct. App. 2004). "Where there is no legal right to a hearing before the administrative body, judicial review of its administrative decision may be

available via non-contested judicial review under Section 536.150, RSMo, if the administrative decision determines legal rights, duties, or privileges of any person." Id.

Defendants argue that Stieg's MAPA claim fails as a matter of law because Stieg had no legal right to a hearing prior to his disciplinary suspension, that he was given all of the process he was due, and that the District is entitled to summary judgment whether this case is reviewed as a "contested" case or a "non-contested" case because Stieg has admitted his misconduct and the record supports the Board's decision to issue a disciplinary suspension. In opposition, Stieg asserts that the MOU creates both constitutionally protected liberty and property interest in Stieg's employment, which according to Stieg, entitles him to the right to a "full-blown" hearing, as well as the right to review under the MAPA.

Assuming *arguendo* that the MOU was in effect during the relevant time period, it did not limit the Board's discretion in disciplinary matters short of termination. Article Seven of the MOU expressly provides that, although employees have a right to seek arbitration on their grievances, "[t]he decision of the arbitrator shall be binding for all termination cases. In all other cases, the decision of the arbitrator shall be advisory in nature." *See* Defs.' Ex. P. In this case, the decision of the arbitrator on disciplinary matters short of termination is non-binding and the appropriateness of the disciplinary measure is left to the Board's unfettered discretion. In such instances, there is no right to a hearing under the MAPA where the District's policy left disciplinary matters short of termination in the District's discretion. *See* Littiken v. Cottleville Community Fire Protection District, 108 S.W.3d 120, 122 (Mo. App. 2003).

Littiken is similar to the case at bench wherein the plaintiff, who had been demoted from his position as assistant chief with a reduction in salary, argued that he was entitled to a hearing on his demotion. Littiken, 108 S.W.3d at 121-122. The Missouri Court of Appeals affirmed the

trial court's dismissal of his case because that district's policies only allowed for hearings in cases of terminations or suspensions while all other matters were left to the district's discretion. Id. at 122. The Missouri Court of Appeals held that there was no requirement to have a hearing because the bargaining agreement did not provide for a hearing in demotion cases. Id. In this case, the MOU does not provide for a hearing in matters short of termination, and therefore Stieg is not entitled to a "full-blown" contested case review hearing pursuant to his MAPA claim.

In regard to non-contested case review, this Court "acts to determine the evidence and give[s] judgment from that evidence" to determine if the Board's decision was "unconstitutional, unlawful, unreasonable, arbitrary, capricious or the product of an abuse of discretion." Cade v. State, 990 S.W.2d 32, 37 (Mo. App. 1999). Stieg admitted in his deposition that he was not truthful with the Board in its investigation when he did not come forward with the information about Kaiser earlier. Furthermore, Stieg admitted that he wrongfully took Wlodarek's confidential documents home with him. Indeed, Stieg has admitted to his misconduct, and the record fully supports the Board's decision to issue a disciplinary suspension.[8] Given Stieg's own admission of misconduct, there is no genuine dispute as to whether the evidence supports the Board's decision to issue a disciplinary suspension. Consequently, the Motion for Summary Judgment regarding Stieg's MAPA claim should be granted.

*II. Declaratory Judgment*

Defendants argue that Stieg's Declaratory Judgment Claim pursuant to R.S.Mo. 536.050 is simply a "mirror image" of his other claims and that it fails as a matter of law because the Board acted properly in issuing his disciplinary suspension which was justified by the evidence which

---

[8]Defendants have argued, "In fact, all things considered, [Stieg] is lucky his employment was not terminated." Defs.' Mem. in Supp. at 16.

includes Stieg's admitted misconduct.  As Defendants note, Stieg's Opposition provides no arguments in support of his Declaratory Judgment claim, even though Defendants have moved for summary judgment on this claim.  Given that the Declaratory Judgment claim is the subject of the instant Motion, and that Stieg has failed to address it in his Memorandum in Opposition or in his Sur-Reply brief, Stieg has abandoned this claim as a matter of law.  Thus, the Motion for Summary Judgment regarding Stieg's Declaratory Judgment Claim should be granted.

*III.  Section 1983*

Stieg argues that his disciplinary suspension violated the due process clause of the Fourteenth Amendment.  "The Due Process Clause of the 14th Amendment provides that, 'no State shall ... deprive any person of life, liberty, or property, without due process of law.'" Krentz, 228 F.3d at 902 (*quoting* U.S. CONST. amend. XIV § 1).  The procedural due process inquiry involves two steps.  Id.  First, Stieg must show that the District deprived him of some "life, liberty, or property" interest.  Id.  If Stieg makes a showing of such a deprivation, he "must then establish that the state deprived him of that interest without sufficient 'process.'"  Id.

Regarding public employment, the only relevant constitutional interests are certain recognized "property interests" or "liberty interests."  Daniels v. Bd. of Curators of Lincoln, 51 S.W.3d 1, 6 (Mo. App. 2001).  Constitutional "property interests" have been defined as "more than an abstract need or desire [for the benefit]" and more than "a unilateral expectation [of the benefit]".  Id. *citing* Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 92 S.Ct. 2701 (1972).  In order for a benefit to be considered a constitutionally protected "property interest," the aggrieved employee must show a "legitimate claim of entitlement to it."  Id.  In the public employment setting, this generally means that there are statutory or contractual limitations placed on an employer with respect to the employee's job.  Id.

Stieg has not identified any statutes or ordinances that mandate that he is to be given a hearing prior to a disciplinary suspension. In addition, there were no contractual provisions that required any type of hearing prior to Stieg's disciplinary suspension because the MOU left all matters short of termination to the Board's unfettered discretion.[9] Thus, Stieg cannot demonstrate any "property interest" that entitles him to any further process.

Nor can Stieg establish the deprivation of a constitutionally protected liberty interest. "A public employee is deprived of his liberty interest in connection with a discharge only when it occurs under circumstances which impose upon the employee a stigma or other disability foreclosing his freedom to take advantage of other employment opportunities." Green v. St. Louis Housing Authority, 911 F.2d 65, 69-70 (8th Cir. 1990). Not only was Stieg not discharged, but Stieg cannot claim that he was unfairly stigmatized by his suspension because he admitted to his misconduct. In short, Stieg cannot establish the deprivation of a constitutionally protected "property" or "liberty" interest, and thus his Section 1983 claim fails as a matter of law. Therefore, the instant Motion regarding Stieg's Section 1983 claim should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#13) be and hereby is **GRANTED**. Judgment is entered for Defendants on the merits of the Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike the Affidavit of Frank J. Vatterott which was submitted with Stieg's Memorandum in Opposition to Defendants' Motion for Summary Judgment as Plaintiff's Exhibit D be and hereby is **DENIED** (#22).

---

[9]Furthermore, as discussed *infra* p. 8, Policy 18 was not in effect at the time of his suspension, and even the informal procedures in place left disciplinary decisions to the Board's discretion.

**IT IS FINALLY ORDERED** that this cause of action is **DISMISSED** from the Court's trial docket of July 25, 2005.

Dated this  30th  day of June, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE